# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>*Plaintiff,*<br><br>v.<br><br>ZTE CORPORATION,<br><br>*Defendant.* | §§§§§§§§§§§§§§  C.A. No. 6:20-cv-00497-ADA |

**DECLARATION OF STEPHEN GRAY**

**IN SUPPORT OF ZTE CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR LACK OF SUBJECT MATTER ELIGIBILITY UNDER 35 U.S.C. § 101**

I, Stephen Gray, hereby declare as follows pursuant to 28 U.S.C. § 1746:

**BACKGROUND AND QUALIFICATIONS**

1. I received a B.S. degree in Economics from California Polytechnic University in 1973.

2. I have over forty years of experience in the communications and computer industries. My background includes systems and software architecture, design and development, as well as senior management positions in development, marketing, and general management.

3. From 1973 to 1977, I worked as a systems programmer and systems analyst at Burroughs Corporation. I worked on data communications software and held several design and product implementation positions in the mid-range and small system development groups (MCP).

4. From 1977 to 1979, I worked as a regional support manager at Olivetti Corporation. I worked on software support for a series of mini- and microcomputer business systems. Applications included general business and on-line front-office banking.

5. From 1979 to 1982, I worked as a manager in communication controller software development at Computer Communications, Inc. I worked as a leader of the architecture, design, development, and testing of an SNA communications controller in the MVS operating environment, I managed 24 professionals. Our group successfully designed, developed and deployed the controller's operating software, diagnostics, host-based compilers, and system support software.

6. From 1982 to 1985, I worked as a manager in foreign system interconnect at Xerox Corporation. I Managed four professionals who defined and developed the technical interconnect strategy for electric page printers to wide-and local-area networks. Our group delivered host software, network and printer engineering services. I developed a new printer interconnection technique, interfaces to Ethernet local area network, and designed connections to IBM mainframes using SNA and the System/370 channel.

7. From 1985 to 1987, I worked as a general manager in host software products at Xerox Corporation. As the founder and leader of the product delivery organization of a Xerox independent business unit, I managed 22 employees and 33 contract professionals. I directed the definition, architecture, design, development, test, product transfer and sustaining engineering of six products for electronic page printers connected to IBM mainframes (MVS, VSE, VM), DEC VAX (VMS) and IBM PC's (DOS).

8. From 1987 to 1988, I worked as a director in product marketing at Simpact Associates. I directed the full life cycle of definition, delivery, marketing and enhancement of four sets of IBM connectivity products, including: (a) Systems Network Architecture (SNA) protocol support hardware and software for Digital Equipment Corporation (DEC) virtual address extension (VAX) systems, (b) An IBM PC-based gateway product that supports SNA and other industry-standard communications architectures, (c) A Netware-based Token Ring Network adapter board and software for DEC VAX systems, and (d) A hardware/software product that receives financial market feeds and reformats the information for presentation to programs running a VAX via a proprietary applications programming interface (API).

9. From 2000 to 2001, I worked as a chief technical officer at NTN Communications, Inc., which is the parent corporation of two operating divisions: Buzztime Entertainment, Inc. and the NTN Network®. I developed and distributed sports and trivia games to a variety of interactive platforms including interactive television, the Internet, PDS and mobile phones. I was responsible for all of the technical aspects of the corporations as well as forward looking programs and business opportunities.

10. From 2001 to 2002, I worked as a chief technical officer at Networld Exchange Incorporated. Networld Exchange, Inc. (NEI) provides Fortune 2000 companies private trading exchange (PTX) solutions that automate their B2B commerce activities. NEI is a restart. NEI is funded by institutional investors in New York and Florida. I was recruited in 4Q01 by the investors as part of the new management team.

11. From 1984 to now, I have been working as a principal at Gray & Gray, LLC. I provide consulting services in a variety of technical area including communications, computer system and software.

12. I have been asked to provide expert testimony on behalf of ZTE Corporation in the above-captioned litigation addressing how certain claims in United States Patent No. 7,203,505 ("the '505 patent" or "the patent in suit") include limitations that were well-understood, routine, or conventional at the relevant time. If called upon to testify at a summary judgment motion hearing or at trial, I expect to testify and provide opinions on subject matter eligibility of the asserted patent claims that are summarized in this declaration.

13. I am being compensated at a rate of $425 an hour. My compensation is not in any way contingent upon the outcome of this litigation, and I have no financial stake in the outcome.

14. As an expert who has been asked to render an opinion on patent-eligible subject matter, I understand that I am obliged to apply any pertinent legal principles. The legal principles that I have been asked to apply are set forth below.

## MATERIALS CONSIDERED AND ASSUMPTIONS MADE

15. In preparing my analysis, I reviewed the following:
    - The patent in suit.
    - The prosecution history of the patent in suit.
    - Plaintiff's Preliminary Infringement Contentions.
    - Defendant's Non-Infringement and Patent Invalidity Contentions.
    - The Court's Claim Construction Order.

16. I have been directed by counsel to make the following assumptions:
    - The relevant date for evaluating whether claim limitations are merely well-understood, routine, or conventional is the effective filing date of the patent in suit.
    - The effective filing date of the patent in suit is August 30, 2001.
    - Claims 1-41 are directed to gathering, reformatting, and sending information which is an abstract idea.

## PATENT-ELIGIBLE SUBJECT MATTER LEGAL PRINCIPLES

17. I understand that subject matter eligibility is ultimately a question of law for the court but that my analysis may serve to provide background information on the technology at issue and help assess whether certain claim limitations are directed to well-understood, routine, or

3

conventional activity as of the effective filing date of the patent in suit, namely August 30, 2001.

18. I am not a legal expert and have not been asked to render a legal opinion. The statements of law recited below were provided by counsel.

19. Laws of nature, natural phenomena, and abstract ideas are not patent-eligible subject matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (finding patent claims were directed to the abstract idea of intermediated settlement and that the addition of steps requiring generic computer implementation did not transform the patent-ineligible concept into a patent-eligible invention).

20. The Supreme Court's framework for distinguishing patents that claim laws of nature, natural phenomena, or abstract ideas from those that claim patent-eligible applications of those concepts is two-part. "First, the court determines whether the claims at issue are directed to one of those patent-ineligible concepts. If so, the court then asks, what else is there in the claims before us?" *Alice*, 573 U.S. at 217–18.

21. To answer the question ''what else is there in the claims?" the court considers the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application. *Alice*, 573 U.S. at 217.

22. Step two of the *Alice* inquiry is the search for an "inventive concept." An inventive concept is an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the judicial exception itself. *Alice*, 573 U.S. at 217–18. Merely adding well-understood, routine, conventional activities previously known to the industry to an abstract idea or law of nature, or natural phenomenon, is not enough to render a claim patent-eligible. *Alice*, 573 U.S. at 225; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79–80 (2012).

**THE PATENT IN SUIT**

23. The '505 patent is directed to "[a] technique for transferring a data message between a first terminal device and a second terminal device via an intermediate terminal device" by "formatting the data message into at least one SMS (Short Message Service) message in the intermediate terminal device." '505 patent, Abstract.

24. Fig. 1 of the '505 patent illustrates a system in which the data transfer may occur. '505 patent, 2:34-35. A mobile terminal 100, such as a cell phone, is connected to a mobile network 120 to transmit data using well-known, standard protocols such as SyncML, SMS, GPRS, and WAP between the network components. *Id.*, 2:61-3:11. The mobile network 120 is connected to a gateway 130. *Id.* Gateway 130 is connected to a remote server 150 via the Internet 140. *Id.* The

4

mobile terminal 100 communicates with the remote server 150 via the mobile network 120, gateway 130, and Internet 140. *Id.* A personal server 160 is connected to the mobile terminal 100 via a short range communication link such as Bluetooth or IR. *Id.* The personal server 160 forwards messages to the remote server 150 via the mobile network 120, gateway 130, Internet 140. *Id.*



'505 patent, Fig. 1.

25. The '505 further explains that "the SMS protocol, SyncML protocol, WBXML, and MIME protocol" used in the invention are "industrywide protocols" that "are readily available." *Id.*, 4:46-51.

26. Additionally, the '505 explains that "[s]ince modern-day mobile terminals already include SMS capability and since SMS centers are already in place and operating, no new technology or equipment is needed to send SyncML messages via the SMS network." *Id.*, 3:49-52.

27. The following asserted claims are at issue:

**Claim 1.** A method for data synchronization between a first terminal device and a second, remotely located, terminal device via an intermediate terminal device, the method comprising:

5

    obtaining, at the first terminal device, data to be synchronized with the second remotely located terminal device;

    transmitting the data from the first terminal device to the intermediate terminal device through a short-range connection;

    formatting the data to be synchronized into at least one SMS (Short Message Service) message in the intermediate terminal device; and

    transmitting the at least one SMS message from the intermediate terminal device to the second remote located terminal device through cellular network connection.

**Claim 2.** The method of claim 1, wherein formatting the data message comprises formatting the data in a SyncML format.

**Claim 3.** The method of claim 1, wherein the intermediate terminal device comprises a mobile terminal device.

**Claim 4.** The method of claim 3, wherein the at least one SMS message is transmitted via a mobile network including an SMS message center.

**Claim 5.** The method of claim 4, wherein the at least one SMS message is transmitted from the intermediate terminal device to the second, remotely located, terminal device via the mobile network and a gateway and the Internet.

**Claim 6.** The method of claim 1, wherein the at least one SMS message comprises a compressed SMS message.

**Claim 7.** The method of claim 6, wherein the compressed SMS message comprises a WBXML (Wireless Application Protocol Binary Extensible Markup Language) encoded message.

**Claim 8.** The method of claim 2, wherein the data formatted in a SyncML format comprises one of two MIME (Multipurpose Internet Mail Extensions) formats.

**Claim 9.** The method of claim 8, wherein the two MIME formats comprise vcal and vcard formats.

**Claim 10.** The method of claim 1, wherein the data message comprises one of a calendar, a to-do list, personal information, and contact information.

**Claim 11.** The method of claim 1, wherein the data message is transferred from the first terminal device to the intermediate terminal device via a short range communication link.

**Claim 12.** The method of claim 11, wherein the short range communication link comprises one of an IR (Infrared) or Bluetooth communication link.

**Claim 13.** The method of claim 1, further comprising transmitting at least one other SMS message from the second terminal device to the first terminal device via the intermediate terminal device.

**Claim 14.** A mobile terminal device comprising:

a data message receiver to receive data from a first terminal device, which data is to be synchronized with a second, remotely located, terminal device via a short range communication link;

a formatter to format the received data into at least one SMS (Short Message Service) message; and

a transmitter to transmit the at least one SMS message to the second, remotely located, terminal device through a cellular network connection.

**Claim 15.** The device of claim 14, wherein the formatter formats the data in a SyncML format.

**Claim 16.** The device of claim 14, wherein the at least one SMS message formatted by the formatter comprises a compressed SMS message.

**Claim 17.** The device of claim 16, wherein the compressed SMS message formatted by the formatter comprises a WBXML (Wireless Application Protocol Binary Extensible Markup Language) encoded message.

**Claim 18.** The device of claim 14, wherein the data formatted by the formatter in a SyncML format comprises one of two MIME (Multipurpose Internet Mail Extensions) formats.

**Claim 19.** The device of claim 18, wherein the two MIME formats formatted by the formatter comprise vcal and vcard.

**Claim 20.** The device of claim 14, wherein the data comprises one of a calendar, a to-do list, a personal information, and contact information.

**Claim 21.** The device of claim 14, wherein the data receiver receives data messages via one of an IR (Infrared) or Bluetooth communication link.

**Claim 22.** The method of claim 14, further comprising a receiver to receive at least one other SMS message from the another terminal device and a data message transmitter to transmit the at least one other SMS message to the first terminal device.

**Claim 23.** A program storage device, readable by machine, tangibly embodying a program of instructions executable by machine to perform a method of synchronization between a first terminal device and a second, remotely located, terminal device via an intermediate terminal device, the method comprising:

> obtaining, at the first terminal device, data to be synchronized with the second remote located terminal device;
>
> transmitting the data from the first terminal device to the intermediate terminal device through a short-range connection;
>
> formatting the data to be synchronized into at least one SMS (Short Message Service) message in the intermediate terminal device; and
>
> transmitting the at least one SMS message from the intermediate terminal device to the second remote located terminal device through a cellular network connection.

**Claim 24.** The device of claim 23, wherein formatting the data message comprises formatting the data in a SyncML format.

**Claim 25.** The device of claim 23, wherein the intermediate terminal device comprises a mobile terminal device.

**Claim 26.** The device of claim 25, wherein the at least one SMS message is transmitted via a mobile network including an SMS message center.

**Claim 27.** The device of claim 26, wherein the at least one SMS message is transmitted from the intermediate terminal device to the second remotely located terminal device via the mobile network and a gateway and the Internet.

**Claim 28.** The device of claim 23, wherein the at least one SMS message comprises a compressed SMS message.

**Claim 29.** The device of claim 28, wherein the compressed SMS message comprises a WBXML (Wireless Application Protocol Binary Extensible Markup Language) encoded message.

**Claim 30.** The device of claim 24, wherein the data formatted in a SyncML format comprises one of two MIME (Multipurpose Internet Mail Extensions) format.

**Claim 31.** The device of claim 30, wherein the two MIME formats comprise vcal and vcard formats.

**Claim 32.** The device of claim 23, wherein the data message comprises one of a calendar, a to-do list, personal information, and contact information.

**Claim 33.** The device of claim 23, wherein the data message is transferred from the first terminal device to the intermediate terminal device via a short range communication link.

**Claim 34.** The device of claim 33, wherein the short range communication link comprises one of an IR (Infrared) or Bluetooth communication link.

**Claim 35.** The device of claim 23, further comprising transmitting at least one other SMS message from the second terminal device to the first terminal device via the intermediate terminal device.

**Claim 36.** A method of data synchronization between a first terminal device and a, remote located, second terminal device via an intermediate terminal device, the method comprising:

> obtaining, at the first terminal device, data to be synchronized with the second remotely located terminal device;

> transmitting the data from the first terminal device to the intermediate terminal device through a short-range connection;

> formatting the data into at least one SMS (Short Message Service) message in the intermediate terminal device;

> transmitting the least one SMS message from the intermediate terminal device to a message center; and

> transmitting the at least one message from the message center to the second remote located terminal device through a cellular network connection.

**Claim 37.** The method of claim 36, wherein the message center comprises an SMS message center.

**Claim 38.** The method of claim 36, wherein the data is transmitted from the first terminal device to the intermediate terminal device via a short range communication link.

**Claim 39.** The method of claim 38, wherein the short range communication link comprises one of either an IR (Infrared) or Bluetooth communication link.

**Claim 40.** The method of claim 31, further comprising transmitting other data from the second terminal device to the first terminal device via the intermediate terminal device.

**Claim 41.** A program storage device, readable by machine, tangibly embodying a program of instructions executable by machine to perform a method of data synchronization between first and second remote locate terminal devices via an intermediate terminal device, the method comprising:

>obtaining, at the first terminal device, data to be synchronized with the second remotely located terminal device;

>transmitting the data from the first terminal device to the intermediate terminal device through short-range connection;

>formatting the data into at least one SMS (Short Message Service) message in the intermediate terminal device;

>transmitting the least one message from the intermediate terminal device to a message center; and

>transmitting the at least one message from the message center to the second remotely located terminal device through a cellular or network connection.

**Claim 42.** The device of claim 41, wherein the message center comprises an SMS message center.

**Claim 43.** The device of claim 41, wherein the data is transmitted from the first terminal device to the intermediate terminal device via a short range communication link.

**Claim 44.** The device of claim 43, wherein the short range communication link comprises one of either an IR (Infrared) or Bluetooth communication link.

**Claim 45.** The device of claim 41, further comprising transmitting other data from the second terminal device to the first terminal device via the intermediate terminal device.

28. My analysis focuses, in particular, on the following claim limitations having to do with gathering, reformatting, and sending information:

- "obtaining, at the first **terminal device**, data to be synchronized with the second remotely located **terminal device**" in claims 1, 23, 36, and 41.

- "transmitting the data from the first **terminal devic**e to the intermediate **terminal device** through a **short-range connection**" in claims 1, 23, 36, and 41.

- "a **data message receiver** to receive data from a first **terminal device**, which data is to be synchronized with a second, remotely located, **terminal device** via a **short range communication link**" in claim 14.

- "formatting the data to be synchronized into at least one SMS (Short Message Service) message in the intermediate **terminal device**" in claims 1, 23, 36, and 41.

- "a **formatter** to format the received data into at least one SMS (Short Message Service) message" in claim 14.

- "transmitting the at least one SMS message from the intermediate **terminal device** to the second remote located **terminal device** through **cellular network connection**" in claims 1, 23, 36, and 41.

- "a **transmitter** to transmit the at least one SMS message to the second, remotely located, terminal device through a **cellular network connection**" in claim 14.

- "formatting the data message comprises formatting the data in a SyncML format" via "the **formatter**" in claims 2, 15, and 24.

- "the intermediate **terminal device** comprises a **mobile terminal device**" in claims 3 and 25.

- "the at least one SMS message is transmitted via a **mobile network** including an **SMS message center**" in claims 4, 26, 37, and 42.

- "the at least one SMS message is transmitted from the intermediate **terminal device** to the second, remotely located, **terminal device** via the **mobile network** and a **gateway** and the **Internet**" in claims 5 and 27.

- "the data message is transferred from the first **terminal device** to the intermediate t**erminal device** via a **short range communication link**" in claims 11, 33, 38, and 43.

- "the **short range communication link** comprises one of an **IR (Infrared)** or **Bluetooth communication link**" in claims 12, 21, 34, 39, and 44.

- "transmitting at least one other SMS message from the second **terminal device** to the first **terminal device** via the intermediate **terminal device**" via "a **receiver** to receive at least one other SMS message from the another **terminal device** and a **data message transmitter** to transmit the at least one other SMS message to the first **terminal device**" in claims 13, 22, 35, 40, and 45.

11

29. The written description teaches as follows regarding these claim limitations:

"[T]he present invention is not limited to any specific combination of hardware and software." *Id.*, 2:56-60.

"Modern-day mobile terminals, such as mobile telephones, have been provided with the SMS (Short Message Service) capability. SMS allows a single short message of up to one hundred sixty characters of text in length to be sent from a sender to a recipient. However, rather than requiring a continuous data connection, the SMS is a store and forward service, that is, short messages are not sent directly from sender to recipient but rather are sent via an intermediary SMS center instead. Each mobile telephone network that supports SMS, for example, has one or more SMS messaging centers to handle and manage SMS messages. Many such modern-day mobile terminals include IR or Bluetooth capability which allows them to communicate with the aforementioned personal portable servers." '505 patent, 1:66-2:12.

"Since modern-day mobile terminals already include SMS capability and since SMS centers are already in place and operating, no new technology or equipment is needed to send SyncML messages via the SMS network." *Id.*, 3:49-52.

"Furthermore, the specific details of the SMS protocol, SyncML protocol, WBXML, and MIME protocol have not been included in the present specification for the sake of brevity. It is understood that these industrywide protocols are readily available and the details thereof are incorporated by reference herein in their entirety." *Id.*, 4:46-51.

## THE LEVEL OF ORDINARY SKILL IN THE ART

30. I am informed by counsel that a person of ordinary skill in the art is a hypothetical person with an ordinary level of creativity, who is presumed to have known all the prior art that existed at the relevant date. I further understand that I may consider the following non-exhaustive list of factors in determining the level of ordinary skill in the art:

    - The educational level of the inventor
    - The type of problems encountered in the art
    - Prior art solutions to those problems
    - The rapidity with which innovations are made
    - The sophistication of the technology
    - The educational level of active workers in the field

31. In my opinion, one of ordinary skill in the art as of August 30, 2001 would have had a bachelor's degree in electrical engineering or a similar field and two or more years of experience with communication networks. Additional education could allow for less experience, and additional experience could allow for a lower educational background.

## WELL-UNDERSTOOD, ROUTINE, AND CONVENTIONAL CLAIM LIMITATIONS

32. I have been asked to examine the issue of whether the following highlighted claim limitations, either individually or as part of an ordered combination of other limitations of the claim, serve to transform the abstract idea of gathering, reformatting and sending information into a patent-eligible invention. I have, therefore, analyzed whether these limitations (either alone or combined with other limitations of the claim) constitute activity or technology that was well-understood, routine, or conventional as of August 30, 2001:

- "obtaining, at the first **terminal device**, data to be synchronized with the second remotely located **terminal device**" in claims 1, 23, 36, and 41.

- "transmitting the data from the first **terminal device** to the intermediate **terminal device** through a **short-range connection**" in claims 1, 23, 36, and 41.

- "a **data message receiver** to receive data from a first **terminal device**, which data is to be synchronized with a second, remotely located, **terminal device** via a **short range communication link**" in claim 14.

- "formatting the data to be synchronized into at least one SMS (Short Message Service) message in the intermediate **terminal device**" in claims 1, 23, 36, and 41.

- "a **formatter** to format the received data into at least one SMS (Short Message Service) message" in claim 14.

- "transmitting the at least one SMS message from the intermediate **terminal device** to the second remote located **terminal device** through **cellular network connection**" in claims 1, 23, 36, and 41.

- "a **transmitter** to transmit the at least one SMS message to the second, remotely located, terminal device through a **cellular network connection**" in claim 14.

- "formatting the data message comprises formatting the data in a SyncML format" via "the **formatter**" in claims 2, 15, and 24.

- "the intermediate **terminal device** comprises a **mobile terminal device**" in claims 3 and 25.

- "the at least one SMS message is transmitted via a **mobile network** including an **SMS message center**" in claims 4, 26, 37, and 42.

- "the at least one SMS message is transmitted from the intermediate **terminal device** to the second, remotely located, **terminal device** via the **mobile network** and a **gateway** and the **Internet**" in claims 5 and 27.

- "the data message is transferred from the first **terminal device** to the intermediate t**erminal device** via a **short range communication link**" in claims 11, 33, 38, and 43.

- "the **short range communication link** comprises one of an **IR (Infrared)** or **Bluetooth communication link**" in claims 12, 21, 34, 39, and 44.

- "transmitting at least one other SMS message from the second **terminal device** to the first **terminal device** via the intermediate **terminal device**" via "a **receiver** to receive at least one other SMS message from the another **terminal device** and a **data message transmitter** to transmit the at least one other SMS message to the first **terminal device**" in claims 13, 22, 35, 40, and 45.

33. In the context of telecommunications, a terminal is a device which ends a telecommunications link and is the point at which a signal enters or leaves a network. Examples of terminal equipment include telephones, fax machines, computer terminals, printers and workstations. Short-range connections include systems providing wireless connectivity within a local sphere of interaction. Examples of short-range connections include IR (Infared) or Bluetooth. A cellular network connection is a radio network distributed over land through cells where each cell includes a fixed location transceiver known as base station. These cells together provide radio coverage over larger geographical areas. A Short Message Service (SMS) message center is a network element in a cellular, or mobile, telephone network. Its purpose is to store, forward, convert and deliver Short Message Service (SMS) messages. An Internet gateway is a network node that connects two different networks that use different protocols (rules) for communicating. In the most basic terms, an Internet gateway is where data stops on its way to or from other networks, for example between a subnet and the greater Internet. One of ordinary skill in the art would have appreciated that these common telecommunications components of a mobile network have been conventionally and routinely used for decades to receive, analyze, and send information, such as messages.

34. Moreover, analyzing (or formatting) the mobile network data in a SyncML format for data synchronization for transmission was well-known and routinely used in the field as of August 30, 2001. *See* Ex. B, SyncML Sync Protocol, Version 1.0 (Dec. 7, 2000), p. 1. The '505 patent even explains that this SyncML is a common technique for data synchronization, including other protocols known to be "industrywide protocols" that "are readily available." '505 Patent, 4:46-51. The '505 patent further explains that "[s]ince modern-day mobile terminals already include SMS capability and since SMS centers are already in place and operating, no new technology or equipment is needed to send SyncML messages via the SMS network." *Id.*, 3:49-52.

35. My review of the patent and its prosecution history failed to uncover any claimed technological improvement provided by the inventions of the claims at issue or a single technological problem that is claimed to be solved by the inventions of the claims at issue. The specification states that the invention relates to "transferring SyncML (Synchronization Markup Language) messages from a source device via a mobile terminal device to a third device." However, one of ordinary skill in the art would have known that "[s]ince modern-day mobile terminals already include SMS capability and since SMS centers are already in place and operating, no new technology or equipment is needed to send SyncML messages via the SMS network." '505 patent, 3:49-52. The specification even states that "the present invention is not limited to any specific combination of hardware and software." Moreover, the combination of SMS and SyncML merely amounts to adding the known SyncML protocol to the known SMS transmission. Since this combination is performed using existing SMS technology, no improvement is made to the technology. Therefore, the claimed methods and devices provide no improvement to transferring SyncML messages because one of ordinary skill in the art would have appreciated that using mobile terminals to synchronize and transfer SyncML messages is routine and conventional in network technology, as the '505 patent itself explains.

36. For the above-stated reasons, the claimed technology merely automated the manual processes of data gathering, reformatting, and sending, and did not improve the functioning of the technology itself or any other technology or technical field. Most of the claims of the '505 patent are directed to receiving information, reformatting it, and sending a message similar to translating a message from one language to another so the recipient can understand the message. The data gathering, reformatting, and sending performed in the '505 could be performed as a completely manual process. The '505 simply claims the transmission of SyncML messages over SMS with generic network components. The '505 patent essentially applies generic network components to the general problem of data gathering, reformatting, and sending using well-known standard network communications techniques, and thus does not improve any technology.

## RESERVATION OF RIGHTS

37. I reserve the right to supplement or amend my opinion if new information or new or expanded arguments are brought to my attention. I also reserve the right to rebut any testimony or arguments that may be relied upon or made by the Plaintiff. I have not yet decided on what exhibits I may use if called upon to testify at a hearing or at trial, and I reserve my right to illustrate my testimony with demonstrative exhibits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 16, 2022

15

_____
Stephen Gray

16